PATTERSON, Presiding Justice, for the Court:
Darlene Anderson and Princess Smith were jointly indicted in the Circuit Court of Forrest County for the robbery of James Fluker by placing him in fear of immediate injury by exhibiting a deadly weapon. Princess Smith was granted a severance and was tried on Thursday, March 13, 1975. The jury found her guilty and she was sentenced to thirty years in the penitentiary. The following Monday, March 17, 1975, Darlene Anderson was tried, convicted and sentenced to sixty years in the penitentiary. She contends on appeal that she was deprived of due process of law because of events which transpired during the course of trial affecting her attorney.
The case is unique, or at least unusual, requiring the facts to be set forth in some detail for a proper understanding of the situation presented to this Court.
Darlene Anderson and Princess Smith were both represented in their trials by Theodore J. Lawyer, an attorney of Gulf-port, Mississippi, who had been engaged in the practice of law for approximately two years at the time. After Princess Smith was convicted, she was returned to jail, but anticipated appealing her case since her attorney had been retained for both trial and appeal purposes.
Darlene Anderson’s trial began the Monday following Princess Smith’s conviction of the previous week. As mentioned, she was also represented by Theodore Lawyer.
James Fluker, a witness for the state, testified that on the morning of February 6, 1975, a “lady” came to the Pineview Apartments where he was employed and inquired whether there were any apartments for rent. When informed there were none, she requested change for $1 which was made for her. She then purchased a soft drink from a machine and departed, but fifteen or twenty minutes later “three of them came back . . . together” with masks covering their faces.
Fluker described the first as wearing a ski mask, the next wearing a stocking cap over her face and carrying a shotgun. The other person was not described. The stocking-capped individual directed the first to tie him up, “pumped” the shotgun and ordered him into the bathroom. After a few moments, he was able to free himself and ascertain that the intruders had left the apartment.
He went to the rear of the building where he saw the fleeing intruders. He was also seen by them as one exclaimed “there he is” and pointed the shotgun at him, and he “jumped back behind the building.” He described the getaway vehicle and stated that $573 of his employer’s money was taken in the robbery.
On cross-examination by the defense attorney, he testified that the “second individual” had on a stocking cap mask and carried a shotgun. Further responding, he stated that he could not make a positive facial identification of the person wearing the stocking cap. He conceded his identification of the defendant rested solely on physical characteristics of height, size and weight. He also testified, on questioning, that during his observation he was terrified and concerned for his life. When asked the color of the stocking cap, he replied: “I guess it might have been dark brown or grayish.”
Having described the defendant’s wearing apparel on direct examination, he was asked on cross-examination whether he had not testified during the trial of Princess Smith that he could not identify any clothes the individual holding the shotgun was wearing on the occasion. He responded:
She had the clothes on that — when I identified her at the police station, just the top was the same as the other part —I could just see the top of her pants. *422 It looked like to me it was maroon; it might not have even been maroon.
Two police officers of Hattiesburg were next called by the state. The substance of their testimony was that they received notice of the robbery and promptly began an investigation which led them to a vehicle matching the description given by Fluker parked at a local motel where they arrested the appellant. These witnesses were briefly cross-examined by defense counsel.
Princess Smith was then called by the state and after she was sworn, defense counsel requested permission to approach the bench and there followed an off-the-record discussion between the court and counsel.[1] Upon questioning by the state’s attorney, the witness identified herself as Princess Smith of Gulfport, Mississippi, and stated that she was twenty-two years of age. On February 6, 1975, she was in Hattiesburg with Darlene Anderson, James Black and Gloria Moody to rob the Farish Street apartments. She identified Darlene, the appellant, as one of the persons committing the robbery. Princess admitted that she asked for an apartment and for change to buy a “coke” and returned to the car and told “them” that she had seen the money; whereupon James Black told Darlene and “myself to go inside and we did this.”
She stated Darlene wore a brown coat and carried a shotgun at the time, continuing, “then she told me to tie him and I did so and told him to step in the bathroom” and “then the other girl, Gloria, that was with us, came in and got the money out of the drawer.” She described their departure:
We left and I think it’s Country Club Drive, and we stopped and took the gun and money bags and the two coats and put them in the woods and he taken the tag off the car and threw it to the left.
Q. What did you do with the masks ?
A. The masks was throwed outside, too.
After they came to the motel and Princess left, not seeing Darlene until they were both in jail where they engaged in the following conversation, according to Princess:
[District Attorney]
Q. What, if anything, did she tell you about ?
A. Well, after the lawyer had came, she told me—
Q. What lawyer are you talking about? Her attorney?
A. Ted Lawyer.
Q. O.K.
A. She said she had gave him the money.
Q. She had what ?
A. Gave him the money, She had the money—
Q. Wait a minute, let me get it straight. She had given the money to who?
A. To Ted Lawyer.
Q. Is that her attorney ?
A. Yes.
Q. All right. Then, what else did she tell you ?
A. That was all, and I talked to him and told him where the stuff was.
Q. Wait, wait, you told him what?
A. Where the shotgun and the two coats and money bags was.
Q. Who did you tell that to ?
A. Well, they had, — James Black had already told him that.
*423 Q. You’re speaking about Ted Lawyer?
A. Yes.
Q. All right. Then what happened?
A. He told me not to say anything because he was going to remove all of that and there wouldn’t be any evidence against us.
Q. Who told you that ?
A. Ted Lawyer.
Q. Have you been promised anything to testify here today ?
A. No.
On cross-examination she was asked by Lawyer, her attorney:
Q. Princess, you were tried on Thursday, is that correct ?
A. Yes.
Q. Jury found you guilty, is that correct?
A. That’s right.
Q. What was the sentence of the Court ?
A. Thirty years, State Penitentiary.
Q. Did this attorney defend you at that trial?
A. Yes.
* * * * íf* *
Q. Now, you say that Darlene Anderson told you something about some money ?
A. Yes.
Q. And, everything here is what she told you, is that correct ?
A. Yes.
Q. You didn’t see anything personally, did you ?
A. No.
Q. Of course, you recall this attorney, you asked this attorney to represent you, is that correct ?
A. Yes.
Q. And, did this attorney represent you?
A. Yes.
* * ifc >|C 5jC *
Q. And, did you sign a contract or retainer for me to represent you on appeal?
A. Yes, I did.
* * * * * *
Q. Now, who asked you to come here and testify today?
A. No one.
***** *
Q. Do you remember telling me that you were unhappy because Darlene and yourself was indicted and James Black and this Gloria Moody you mentioned were not indicted ? Do you remember telling me that ?
A. Yes, I remember telling you that.
Q. And, you said that they were going to have to go and serve time in the Penitentiary along with you ?
A. No, I didn’t put it that way. I said it was only right for them to serve time also because they were in it just as much as I was, or maybe more.
Q. Now, did you see me go out in the woods and remove the evidence ?
A. No.
Q. Do you know to your knowledge whether this lawyer removed any evidence ?
A. I only know what you told me.
BY HON. REX K. JONES: [District Attorney]
*424 Let her go ahead and explain what you told her, then. Go ahead and explain your answer.
* * * * * *
A. No, you told me not to say anything, that you were going to remove the evidence and that it wouldn’t be any against me and shortly later you told me that you had burned it.
BY HON. REX K. JONES:
That he’d what ?
A. Burned it.
[Defense Attorney, Continuing]:
Q. Well, did you see this attorney burn any evidence ?
A. I couldn’t. I was in jail. I can only go by what you told me.
Q. When did I tell you something like this?
A. When you came to see us again.
Q. When was that ?
A. In the county jail.
Q. Who did I say that in the presence of, do you know ?
A. I think it was Darlene and Gloria.
Q. Now, what have you been promised, if anything to testify ?
A. I haven’t been promised anything.
This concluded the state’s case and after a recess, the defendant also rested. The jury returned a verdict of guilty.
Theodore Lawyer was permitted to withdraw from the case and Attorney John Walker became Darlene Anderson’s counsel on a motion for a new trial. Attorney Fred Banks, Jr. represented Attorney Lawyer who was then under indictment in the Circuit Court of Forrest County. Lawyer was called as a witness, over the state’s objection that he was an officer of the court and his testimony could endanger future cases. However, he was permitted to testify within the following limitations :
...in a pre-hearing conference a limitation was placed on Mr. Lawyer’s testimony and he is called solely for the purpose of testifying to the facts previously alleged in an affidavit supplied' with this motion for new trial and with the understanding that there will be a limitation on cross-examination and direct examination which would prevent Mr. Lawyer from having to testify as to any facts relative to the prosecution which he faces, he is allowed to take the stand.
Lawyer testified that he had no prior knowledge that Princess Smith would testify for the state during Darlene Anderson’s trial and that her testimony had the following effect:
. . . I was completely surprised. I was shocked that she was called to testify on behalf of the State in that I had not counselled with her since she was sentenced and prior to the time of Darlene Anderson’s trial. My mind and my thoughts became disoriented. I was completely flustered by the testimony and it rendered me — those conditions rendered me incapable of conducting any type of effective and organized defense for my client, Darlene Anderson.
When asked whether he objected to Princess testifying, he responded:
I made an objection asking the Court to allow me to voir dire the witness before she testified.
This point was pursued on cross-examination :
Q. You were given permission of talk to Princess Smith, were you not, when the Court recessed at this time ? Do you recall this in the trial?
A. No, I was not; absolutely not.
*425 Q. Do you not recall the jury being removed at that time and going into the room?
A. No, I recall the jury leaving vaguely, but what I do recall is the Judge allowing me to speak with my client, Darlene Anderson, and I did try to speak with her. And I recall that—
Q. But, I mean the Court gave you permission then to discuss this matter with your client and gave you time in which to discuss the matter with your client at the time the matter came to you.
A. The matter of the voir dire ?
Q. The matter of discussing this with your client.
A. The State had rested when I was allowed to discuss the matter with my client, to my best remembrances, I’ll say.
The motion was overruled. It was the court’s opinion that the defendant’s attorney “demeaned himself as any other attorney or officer of the court would have done under a similar circumstance” and “had a timely motion been filed by the attorney for the accused, that may have been another matter.”
This opinion does not relate to Darlene Anderson’s guilt or innocence since such properly rests with the jury. It is directed solely to the question of whether the appellant was accorded due process of law, a fair trial, under the circumstances above. We are of the opinion that citation of authority is not needed to reach the conclusion that she did not. When the attorney representing the appellant was branded a conspirator to destroy the evidence of armed robbery by Princess Smith, also his client, his effectiveness as an attorney ceased.
After being labeled a criminal, his cross-examination was directed to his own exoneration and not to the interest of his client. The testimony discloses that Lawyer’s cross-examination of Fluker was about as effective as could be expected. Fluker’s ability to recall the wearing apparel of Anderson was put in doubt, as was his ability to identify the appellant by her physical characteristics. The cross-examination of the police officers was brief and nonproductive since the defendant really had nothing to gain from it.
Thereafter the cross-examination of Princess Smith — every question — was directed to the attorney’s benefit. Moreover, defense counsel’s summation to the jury was devastated, in our opinion, before it ever began because of the criminal shadow placed upon defense counsel. It presented from the jury's viewpoint, we think, the argument or plea of a thief for a thief. Lawyer’s prestige as an attorney, the respect he held as an officer of the court, had been removed by his client’s unanswered and undenied testimony. It was unaided even by an instruction that it be considered with great caution and suspicion as accomplice testimony so that whatever words were used in summation of Anderson’s defense had to fall upon deaf ears. In any event, the interests of Theodore Lawyer and his clients, Darlene Anderson and Princess Smith, had been thrust into an area of conflict so real and apparent that there was no way to salvage the trial other than by declaring a mistrial.
We conclude the court erred by not directing a mistrial on its own motion. Our jurisprudence requires nothing less and the constitution commands it. Art. 3, § 26, Miss. Constitution (1890) and Stewart v. State, 229 So.2d 53 (Miss.1969).
REVERSED AND REMANDED.
GILLESPIE, C. J., INZER, P. J., and SMITH, ROBERTSON, BROOM and LEE, JJ., concur.
SUGG and WALKER, JJ., dissent.

. Testimony concerning the discussion is referred to on the motion for a new trial.